## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RODNEY NORMAN**                                             **CIVIL ACTION**

**VERSUS**                                                    **NO. 14-2389**

**BURL CAIN, WARDEN L.S.P.**                                  **SECTION "B"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Rodney Norman, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On October 31, 2002, Norman was indicted for second degree

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2] Rec. Doc. No. 5.

murder by a Jefferson Parish grand jury.[3]  The Louisiana Fifth Circuit Court of Appeal

summarized the facts determined at trial as follows:

> At approximately 4:45 a.m. on July 21, 2002, Deputy Jimmy Mendez of the Jefferson Parish Sheriff's Office was dispatched to Club James in Jefferson Parish and upon arrival observed a black male lying on the ground face down. The victim, Keith Landry, was shot in the back of the head.  A medical unit checked the victim and found no sign of life.
>
> At trial, Carlos Nichols testified that on the night of the murder he and the victim were drinking prior to their arrival at Club James where a friend of the victim's was having a birthday party.  Mr. Nichols testified that the victim was drunk, but did not fight with anyone that night, including defendant.
>
> Mr. Nichols did not know defendant, but saw him at the Club James on the night of the murder.  Mr. Nichols stated that defendant took pictures with Shawn, the person who was celebrating his birthday, and Shawn's girlfriend, Kizzy.  At the time the pictures were taken the defendant was holding a gun in his hand. Kizzy gave the victim a cake to bring out to Shawn's vehicle.  The victim left the club with the cake.  Mr. Nichols had one more beer then went outside to join the victim.
>
> According to Mr. Nichols, he looked over his shoulder and saw defendant push the victim, although they were not "throwing punches."  Then he heard the victim say, "what the f***."  Mr. Nichols testified that defendant was fumbling with a 9 mm gun in his waist for about six seconds.  The defendant's hand was shaking as he pointed the gun at the victim's face.  Thereafter, the victim looked at defendant and said, "f*** it." The victim turned his back and took a step, and then the defendant shot him.  Mr. Nichols explained that when the victim walked towards him he saw blood coming out of his ears, nose and mouth and he then fell back three or four feet from where he was.  After defendant shot the victim he put the gun back in his waistband and walked towards the Westbank Expressway. Mr. Nichols stated that he identified the perpetrator to a uniformed deputy and was later shown a photographic lineup.  In this lineup, Mr. Nichols confirmed his identification of the defendant.  Mr. Nichols testified that there was no doubt in his mind that the defendant shot the victim on the morning of July 21, 2002.
>
> Detective David Morales, a homicide detective with the Jefferson Parish Sheriff's Office, was assigned to investigate the murder at the Marrero nightclub. At the scene, he located a spent 9 mm cartridge casing.  Detective Morales testified that after the interview with Mr. Nichols and other witnesses on the scene, defendant became a suspect.  The detective admitted that he was sure that

---

[3]St. Rec. Vol. 2 of 6, Indictment, 10/31/02.

some of the people interviewed had been drinking.  He testified that Sergeant Dennis Thornton took Mr. Nichols' original statement and then Sergeant Thornton showed Mr. Nichols the photographic lineup.  Later the Sergeant took a second statement from Mr. Nichols.  After Mr. Nichols positively identified the defendant, Detective Morales secured an arrest warrant, but was unable to locate defendant.  Consequently, a wanted bulletin was prepared.  A search warrant was conducted at defendant's house; however, nothing was recovered.  About six weeks later defendant turned himself into authorities.  At that time, the defendant gave a recorded statement which was transcribed and played for the jury.

In defendant's statement, he stated he turned himself in to tell his side of the story regarding a shooting at the Club James on Sunday, July 21st around 4:43 a.m.  Defendant maintained that on Saturday night he went to Shawn's birthday party at Club James.  Defendant stated that he took a gun out of his car and took pictures with it at the birthday party.  Defendant stated that he had two fights that night.  Defendant did not know the victim, but after the detective showed him a picture of Keith Landry from the birthday party, the defendant identified the victim as the person with whom he fought.  The first fight was at the Shell Station at Ames and the Westbank Expressway.  According to the defendant the victim pushed him, then he punched the victim and they began fighting.  The defendant's friends pulled him away and he went to Club James.  The defendant stated that the gun was in the waistband of his pants underneath his shirt.  According to defendant, he was fighting with the victim near the front door of Club James when the gun dropped.  The defendant stated that the victim was reaching for the gun, so he grabbed the victim to stop him from getting the gun while they were fighting.  The defendant said that when he picked the gun up he heard the victim say, "[m]an, why don't you go head."  Defendant said he picked the gun up and as he did the gun just went off.  At first, he was not even aware that he had shot the victim.  He paused for a minute and then began running towards the Westbank Expressway.  During the flight from the scene, the defendant threw the gun in an empty lot.  He stated that he was drunk and was sorry.  He said he did not mean to kill the victim.  The defendant denied striking him on the head with the barrel of the gun.

Detective Morales testified that he took a statement from defendant's nephew, Joseph Norman.  He testified that Joseph Norman advised him that his uncle had been drinking heavily and had told Joe that he thought he saw the person that had previously shot him.  The defendant began fighting with the victim behind the Auto Zone.  Although the fight was broken up, the two began fighting again in front of Club James.  Joseph Norman then stated that the defendant went up behind the victim and struck him on the head with the barrel of a gun.  Then, defendant shot the victim.

Detective Morales also interviewed Kenneth Beauford, who stated he was riding his bicycle near the Auto Zone when he saw two men fussing and one of

the men had a pistol.  According to Kenneth Beauford, friends convinced the man with the pistol to put it away and let the other man go.  Kenneth Beauford's description of the person with the pistol matched the description given of the defendant that night.  Detective Morales testified that, based on those two statements, he believed there was at least one altercation between the victim and defendant before the shooting.

Dr. Karen Ross, a stipulated expert in the field of forensic pathology, conducted an autopsy on the victim on July 22, 2002.  She testified that the victim had a gunshot wound to his head, with the bullet entrance on the back of the left side of the head.  The examination revealed no defensive wounds.  In her opinion, the victim died as a result of a gunshot wound of the head and the manner of his death was a homicide.  Further, Dr. Ross testified that the victim was shot in the back of the head; therefore, he was not face to face with the shooter when he was shot, and at least the muzzle of the weapon had to be behind him.  Dr. Ross found no firearm residue, so the muzzle of the weapon was at least approximately three feet away from the victim at the time the weapon was discharged.

Dr. Ross testified that according to the victim's toxicology results, he had recently ingested cocaine and was most likely still drinking just before his death.

State v. Norman, 926 So.2d 657, 658-60 (La. App. 5th Cir. 2006); State Record Volume 4 of 6, Louisiana Fifth Circuit Opinion, 05-KA-794, pp. 3-6, March 14, 2006.

Norman was tried before a jury on September 8 and 9, 2004, and was found guilty as charged.[4]  The state trial court denied Norman's motion for a new trial on September 30, 2004.[5]  After waiver of sentencing delays, the court sentenced Norman that day to serve life in prison at hard labor without benefit of parole, probation or suspension of sentence.[6]

_____

[4]St. Rec. Vol. 2 of 6, Trial Minutes, 9/8/04; Trial Minutes, 9/9/04; Jury Verdict, 9/9/04; St. Rec. Vol. 4 of 6, Trial Transcript, 9/8/04; Trial Transcript, 9/9/04.

[5]St. Rec. Vol. 2 of 6, Sentencing Minutes, 9/30/04; Motion for New Trial, dated 9/30/04; St. Rec. Vol. 4 of 6, Sentencing Transcript, 9/30/04.

[6]St. Rec. Vol. 2 of 6, Sentencing Minutes, 9/30/04; St. Rec. Vol. 4 of 6, Sentencing Transcript, 9/30/04.

On direct appeal to the Louisiana Fifth Circuit, Norman's appointed counsel asserted that the evidence was insufficient to support the second degree murder verdict.[7] The court affirmed the conviction and sentence on March 14, 2006, finding no merit in the claim.[8]

The Louisiana Supreme Court denied Norman's subsequent writ application without stated reasons on January 12, 2007.[9] His convictions became final ninety (90) days later, on April 12, 2007, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

In the meantime, on February 14, 2007, Norman signed and submitted an application for post-conviction relief to the state trial court in which he asserted the following grounds for relief:[10] (1) The conviction was obtained in violation of his state and federal constitutional rights not to give evidence against himself when he was not

---

[7]St. Rec. Vol. 4 of 6, Appeal Brief, 05-KA-794, 11/7/05.

[8]Norman, 926 So.2d at 657; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 05-KA-794, 3/14/06.

[9]State ex rel. Norman v. State, 948 So.2d 145 (La. 2007); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2006-KH-1366, 1/12/07; La. S. Ct. Writ Application, 06-KH-1366, 6/6/06 (dated 4/13/06); St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2006-KH-1366, 6/6/06 (showing postal meter 4/17/06).

[10]St. Rec. Vol. 1 of 6, Uniform Application for Post-Conviction Relief, 2/22/07 (dated 2/14/07); St. Rec. Vol. 2 of 6, Memorandum (continued), 2/14/07.

competent to understand the proceedings against him and the <u>Miranda</u> rights read to him. (2) The conviction was obtained in violation of state and federal constitutional rights to effective assistance of counsel when counsel failed to object and move for the court to evaluate his mental competence.

After receiving additional briefing, the state trial court denied relief,[11] concluding that the first claim was in procedural default pursuant to La. Code Crim. P. art. 930.4(B) and (C).[12]  The court found the ineffective assistance of counsel claim meritless under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).[13]

The Louisiana Fifth Circuit denied Norman's related writ application on June 25, 2007, finding no error in the trial court's ruling.[14]  The Louisiana Supreme Court also denied Norman's related writ application without stated reasons on May 2, 2008.[15]

---

[11]St. Rec. Vol. 1 of 6, Trial Court's Order, 4/18/07; State's Response, 4/12/07; Objection to State's Response, 5/1/07 (dated 4/23/07); Trial Court's Order, 5/14/07.

[12]St. Rec. Vol. 1 of 6, Trial Court's Order, 4/18/07.

[13]St. Rec. Vol. 1 of 6, Trial Court's Order, 4/18/07.

[14]St. Rec. Vol. 5 of 6, 5th Cir. Order, 07-KH-358, 6/25/07; 5th Cir. Writ Application, 07-KH-358, 5/25/07 (dated 5/21/07).

[15]<u>State ex rel. Norman v. State</u>, 979 So.2d 1276 (La. 2008); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2007-KH-1519, 5/2/08; La. S. Ct. Writ Application, 07-KH-1519, 7/19/07 (dated 7/9/07); St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2007-KH-1519, 7/19/07 (showing postmark 7/10/07).

More than five years later, on June 4, 2013, Norman submitted a petition for a writ of habeas corpus which was received by the state trial court on June 7, 2013.[16]  Norman argued in the petition that he should not be barred from challenging his conviction on grounds that he received ineffective assistance of trial and appellate counsel.

On July 22, 2013, the state trial court determined that the pleading was not a procedurally proper motion for habeas corpus relief and construed the pleading as an application for post-conviction relief.[17]  The court also held that, as an application for post-conviction relief, the pleading was not timely filed under La. Code Crim. P. art. 930.8(A).  The court also denied Norman's later-filed motion for leave to appeal its ruling because no appeal was available from that type of order.[18]

The Louisiana Fifth Circuit denied Norman's related writ application on October 29, 2013, finding no error in the trial court's rulings.[19]  The Louisiana Supreme Court denied Norman's subsequent writ application on June 20, 2014, on grounds that it sought untimely post-conviction review, citing La. Code Crim. P. art. 930.8 and State ex rel.

---

[16]St. Rec. Vol. 1 of 6, Petition for Writ of Habeas Corpus Relief, 6/7/13 (metered 6/4/13); Trial Court Order, 7/22/13.

[17]St. Rec. Vol. 1 of 6, Trial Court Order, 7/22/13.

[18]St. Rec. Vol. 1 of 6, Notice of Intent to Appeal, 8/16/13; Trial Court Order, 8/22/13; Motion to Clarify, 10/2/13; Trial Court Order, 1/25/13.  The Louisiana Fifth Circuit also denied an application for writ of mandamus submitted by Norman on July 19, 2013, because by the time of its review, the trial court had ruled on the petition for habeas corpus relief.  St. Rec. Vol. 5 of 6, 5th Cir. Order, 13-KH-644, 8/27/13; 5th Cir. Writ Application, 13-KH-644, 8/1/13 (dated 7/19/13).

[19]St. Rec. Vol. 5 of 6, 5th Cir. Order, 13-KH-819, 10/29/13; 5th Cir. Writ Application, 13-KH-819, 10/8/13 (dated 9/26/13).

Glover v. State, 660 So.2d 1189 (La. 1995).[20]  The court also denied Norman's request for reconsideration on September 26, 2014.[21]

## II.   FEDERAL HABEAS PETITION

On November 7, 2014, the clerk of court filed Norman's petition for federal habeas corpus relief in which he asserts "constitutional challenges to AEDPA and any other statute, law or rule that would keep the merits of my claims from being ruled on." Rec. Doc. No. 5, p. 5, ¶12.  Construing his pleadings broadly, his claims appear to be the same ineffective assistance of trial and appellate counsel arguments that he asserted in his second state court application for post-conviction review and for which relief was denied as untimely under La. Code Crim. P. art. 930.8 and State ex rel. Glover.  See Rec. Doc. No. 5, pp. 19, 26.

The State filed a response in opposition to Norman's federal petition arguing that it should be dismissed as untimely.[22]  In his reply, Norman urges three grounds to overcome the State's limitations defense.[23]  First, he repeats his argument that the limitations periods imposed by federal and state law are unconstitutional.  Second, he

---

[20]State ex rel. Norman v. State, 141 So.3d 281 (La. 2014); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2013-KH-2621, 6/20/14; La. S. Ct. Writ Application, 13-KH-2621, 11/8/13; St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2013-KH-2621, 11/8/13 (showing postmark 11/5/13).

[21]State ex rel. Norman v. State, 149 So.3d 254 (La. 2014); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2013-KH-2621, 9/26/14; Motion to Reconsider, 13-KH-2621, 7/8/14.

[22]Rec. Doc. No. 14.

[23]Rec. Doc. No. 15.

urges that actual innocence allows a person like himself to overcome the limitations bar.

Third, he argues that before relief can be denied, the courts must resolve whether the bars

to review of his claims are unconstitutional.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[24] and

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).   The AEDPA therefore

applies to Norman's petition, which, for reasons discussed below, is deemed filed in this

court on October 16, 2014.[25]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether petitioner's claims were adjudicated on the merits in

---

[24]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The official stamp from the prison's Legal Programs Department reflects that Norman delivered his petition to prison officials on October 16, 2014, the same day it was e-mailed to the clerk of this court for filing.  Rec. Doc. No. 5, p.1. The fact that Norman later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin, 310 F.3d at 847.

state court; i.e., the petitioner must have exhausted state court remedies and must not be

in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir.

1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Norman's federal petition is not timely filed.  The record

before this court confirms that Norman's federal petition was not timely filed and must

be dismissed for that reason.  Norman's challenges to the State's limitations defense do

not warrant a different result.

IV.    STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases

within one year of the date his conviction became final.[26]  Duncan v. Walker, 533 U.S.

167, 179-80 (2001).  Norman contends, however, that the limitations provision of the

---

[26]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:
> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
> A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
> C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
> D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

AEDPA is unconstitutional because it violates his right to access to the courts and to have the merits of his claims heard.  These arguments are foreclosed by Supreme Court and Fifth Circuit precedent upholding the constitutionality of the AEDPA in its entirety, including its limitations period.  See Felker v. Turpin, 518 U.S. 651, 664 (1996) (the AEDPA restrictive filing requirements do not violate the Suspension Clause); Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000) (per curiam) (same); Turner v. Johnson, 177 F.3d 390, 392-393 (5th Cir.) (per curiam) (the limitations period of the AEDPA does not violate due process), cert. denied, 528 U.S. 1007 (1999); Graham v. Johnson, 168 F.3d 762, 787-88 (5th Cir. 1999) (rejecting arguments that AEDPA's restrictions on successive petitions violate the constitution).  The "strict one-year limitations period" imposed by Congress for the filing of habeas corpus petitions is "subject only to the narrowest of exceptions."  Fierro v. Cockrell, 294 F.3d 674, 684 (5th Cir. 2002), cert. denied, 538 U.S. 947 (2003).  For the reasons discussed below, none of the exceptions urged by Norman render his petition timely.

Norman's conviction became final on April 12, 2007, which was ninety (90) days after the Louisiana Supreme Court completed review of his direct appeal, and he did not seek United States Supreme Court review. Under a literal application of Section 2244, Norman had one year from finality of his conviction, or until April 11, 2008, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as

untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Norman has asserted no reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case. The record does not demonstrate the type of circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent.  See Holland, 130 S. Ct. at 2574-75 (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of

the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

     In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of

limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added).  By its plain

language, this provision does not create a new, full, one-year term within which a federal

habeas petition may be filed at the conclusion of state court post-conviction proceedings.

Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision

as a tolling statute.  Duncan, 533 U.S. at 175-178.

       The decisions of the Fifth Circuit and other federal courts have held that because

this statute is a tolling provision, the time during which state court post-conviction

proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed
> state habeas application is pending must be excluded when calculating the
> one[-]year period.  Under the plain language of the statute, any time that
> passed between the time that [petitioner's] conviction became final and the
> time that his state application for habeas corpus was properly filed must be
> counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL

609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F.

Supp.2d 771, 771-72 (D. Md. 1998).

       For a post-conviction application to be considered "properly filed" within the

meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544

U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is]

the end of the matter' for purposes of § 2244(d)(2)");  Williams v. Cain, 217 F.3d 303,

306-307 n.4 (5th Cir. 2000) (quoting <u>Villegas v. Johnson</u>, 184 F.3d 467, 469 (5th Cir. 1999)); <u>Smith v. Ward</u>, 209 F.3d 383, 384-85 (5th Cir. 2000).   The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. <u>Causey v. Cain</u>, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002); <u>Williams</u>, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v.</u>

Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).  Requests for document and transcript copies, like those submitted by this petitioner in the state courts, also are not other collateral review for purposes of the tolling calculation.  Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000), aff'd, 239 F.3d 365 (5th Cir. 2000); Gerrets v. Futrell, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

The one-year AEDPA statute of limitations period normally would begin to run on the day after a petitioner's state conviction became final under federal law.  In this case, however, when his conviction became final on April 12, 2007, Norman already had a properly filed state application for post-conviction relief pending in the state courts. For this reason, the start of the AEDPA one-year statute of limitations was suspended through May 2, 2008, when the Louisiana Supreme Court denied Norman's related writ application.

Therefore, the AEDPA one-year statute of limitations period began to run on May 3, 2008, and continued to do so without interruption for one-year, until Monday, May 4,

2009,[27] when it expired.  Norman had <u>no</u> properly filed state court application for post-conviction relief or other collateral review of any kind pending in any state court during that period.  Norman had no such filing at all, until more than four (4) years later when he submitted his next post-conviction petition to the state trial court in June 2013.[28]  This application, filed long after expiration of the AEDPA one-year statute of limitations, provides no tolling benefit under the statute.  <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000).

Norman's conclusory actual innocence claim also fails to alter the tolling calculation or the applicable statute of limitations.  While a claim of actual innocence may provide "a gateway through which a petitioner may pass" when the limitations period has elapsed, "tenable actual-innocence gateway pleas are rare." <u>McQuiggin v. Perkins</u>, __ U.S. __, 133 S. Ct. 1924, 1928 (2013).  To meet the threshold actual innocence requirement, a petitioner must present new evidence in support of his claim and "'show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"  <u>Id</u>. at 1935 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)).

---

[27]The last day of the period fell on Saturday, May 2, 2009, moving the final day to the next non-holiday, Monday, May 4, 2009.  Fed. R. Civ. P. 6(a)(1)(C); La. Code Crim. P. art. 13.

[28]As mentioned above, the letters sent to the clerk of court in 2011 and 2012 seeking document copies were sent well after the AEDPA statute of limitations period expired and were <u>not</u> properly filed state applications for post-conviction or other collateral review.

In this case, Norman presents <u>no</u> evidence, much less newly-discovered evidence, that would undermine this court's confidence in the jury's finding of guilt. The claims he asserts are not related to his actual innocence and instead address his misgivings about his counsel's representation at trial and on appeal. His mere reference to actual innocence as a means to bypass a limitations defense, without any evidence to support it, is insufficient to invoke this rare exception to the limitations bar.

Construing his petition broadly, Norman also may suggest that the state courts' procedural bar to review of his claims should not prevent this court from reviewing his ineffective assistance of counsel argument. In <u>Martinez v. Ryan</u>, __ U.S. __, 132 S. Ct. 1309 (2012), the United States Supreme Court recently held that a <u>state imposed</u> "'<u>procedural default</u> will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" <u>Trevino v. Thaler</u>, __ U.S. __, 133 S. Ct. 1911, 1912 (2013) (quoting <u>Martinez</u>, 132 S. Ct. at 1320) (emphasis added). However, neither <u>Martinez</u> nor <u>Trevino</u> provide a basis to excuse Norman's failure to assert his ineffective assistance of counsel claim in a timely manner.

As an initial consideration, when Norman first raised ineffective assistance of counsel on post-conviction review in 2007, although he was not represented by counsel, his claim was addressed by the state courts <u>on the merits</u> under <u>Strickland</u>. There was no procedural bar imposed to prevent review of his claims when he exercised his first

opportunity to present the claims.  The state imposed procedural bar being challenged by Norman was invoked during his second round of post-conviction review in 2013.

Nevertheless, the default at issue in this court is not the state imposed procedural bar to review of his claims.  Instead, the bar to current review is Norman's failure to meet the federal limitations requirements under the AEDPA.  As discussed above, Norman had one year under federal law to file his petition in a federal court, and he failed to do so. The Martinez and Trevino decisions do not address or provide an excuse for the untimely filing of a federal habeas petition.  See Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); Smith v. Rogers, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); Falls v. Cain, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun.13, 2014) (Order adopting Report and Recommendation).

In addition, Martinez and Trevino do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA.  See In re Paredes, __ F. App'x __, 2014 WL 5420533, at *6 (5th Cir. Oct. 25, 2014) ("... the Supreme Court has not made either Martinez or Trevino retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); Adams v. Thaler, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  Norman has not established any basis to overcome the AEDPA's limitations period, and Martinez and Trevino do not

apply to or provide any equitable or statutory relief from his untimely filing under the AEDPA.

Norman's federal petition is deemed filed in federal court on October 16, 2014, which was more than five years after the AEDPA's one-year statute of limitations expired on May 4, 2009. Norman's federal petition was not timely filed and must be dismissed with prejudice for that reason.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Norman's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[29]

New Orleans, Louisiana, this \_\_\_\_\_30th\_\_\_\_ day of March, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[29]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.